O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ELVIA LANDEROS,                    )    Case No. CV 11-7156-JPR
                                   )
              Plaintiff,           )    MEMORANDUM OPINION AND ORDER
                                   )    AFFIRMING THE COMMISSIONER
         v.                        )
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of the Social         )
Security Administration,           )
                                   )
              Defendant.           )
_____    )

I.    PROCEEDINGS

     Plaintiff seeks review of the Commissioner's final decision denying her application for Supplemental Security Income ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).  This matter is before the Court on the parties' Joint Stipulation, filed June 5, 2012.  The Court has taken the Joint Stipulation under submission without oral argument.  For the reasons stated below, the Commissioner's decision is affirmed and this action is dismissed.

## II.   BACKGROUND

Plaintiff was born on September 17, 1962.  (Administrative Record ("AR") 76.)  She has a third-grade education and does not speak English.  (AR 286, 293, 479-81.)  She claims to have been disabled since November 30, 1997, because of several impairments, including a fractured neck, knee, shoulder, and hip; "severe" anxiety and depression; stomach ulcer; shortness of breath; and sinus problems.  (AR 83.)

On April 7, 2006, Plaintiff filed an initial application for SSI.  (AR 25.)  It was denied based on "excess resources" because the ALJ determined she owned property in Mexico.  (Id.)  On March 7, 2007, Plaintiff filed a second SSI application.  (Id.)  That application was denied because the ALJ found that she was not a citizen or legal resident of the United States.  (Id.)  While her appeal of that decision was still pending, Plaintiff protectively filed a third application for SSI, on May 8, 2008.[1]  (Id.)  After that application was denied, she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 14, 2010.  (AR 477-507.)  Plaintiff, who was represented by counsel, testified at the hearing with the assistance of a Spanish-language interpreter; vocational expert ("VE") Rheta B. King also testified.  (AR 25, 479-507.)[2]

---

[1]  The AR does not contain Plaintiff's SSI applications, but other documents in the record reflect that they were filed on April 7, 2006, March 7, 2007, and May 8, 2008.  (See, e.g., AR 25, 71, 116-27.)

[2]  Plaintiff also filed several applications for Disability Insurance Benefits, all of which were denied.  (See AR 25.)  She does not challenge those denials here.  (See AR 25, 57.)

On November 19, 2010, the ALJ denied Plaintiff's claim. He first found that Plaintiff was a lawful permanent resident of the United States and thus her March 7, 2007 SSI application was erroneously denied; he therefore reopened that application and conducted his analysis based on the March 7, 2007 filing date. (AR 26.) He then determined that Plaintiff had the severe impairments of "facet hypertrophy and levoscoliosis of the lumbosacral spine, degenerative changes of the right knee, uterine fibroid, an adjustment disorder with depressed mood[,] and borderline intellectual functioning" and noted that "by July 2008, she is obese." (AR 28 (citations omitted).) He found, however, that she retained the residual functional capacity ("RFC")[3] to perform "the full range of medium work as defined in 20 CFR 416.967(c) (lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for six out of eight hours, and sit for six hours in an eight-hour workday)" (AR 31); thus, she was not disabled (AR 38).

On January 10, 2011, after retaining a new attorney, Plaintiff requested review by the Appeals Council. (AR 16-21.) On June 1, 2011, Plaintiff submitted an additional brief to the Council. (AR 468-70.) On July 8, 2011, the Council considered the additional brief but denied Plaintiff's request for review. (AR 5-7.) The Council ordered that the additional brief be made part of the administrative record. (AR 10.) This action

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. 20 C.F.R. § 416.945(a); see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

followed.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's findings and decision should be upheld if they are free of legal error and are supported by substantial evidence based on the record as a whole.  § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Id. at 720-21.

## IV.  THE EVALUATION OF DISABILITY

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a severe physical or mental impairment that is expected to result in death or which has lasted, or is

4

expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

## A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. § 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  § 416.920(a)(4)(i).  If the claimant is not engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim must be denied. § 416.920(a)(4)(ii).  If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  § 416.920(a)(4)(iii).  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the ALJ to determine whether the claimant has sufficient RFC to perform her past work; if so, the claimant is not disabled and the claim is denied. § 416.920(a)(4)(iv).  The claimant has the burden of proving that

1  she is unable to perform past relevant work.  <u>Drouin</u>, 966 F.2d at
2  1257.  If the claimant meets that burden, a prima facie case of
3  disability is established.  <u>Id.</u>  If that happens or if the
4  claimant has no past relevant work, the ALJ then bears the burden
5  of establishing that the claimant is not disabled because she can
6  perform other substantial gainful work in the national economy.
7  § 416.920(a)(4)(v).  That determination comprises the fifth and
8  final step in the sequential analysis.  § 416.920; <u>Lester</u>, 81
9  F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

10     **B.   The ALJ's Application of the Five-Step Process**

11         At step one, the ALJ found that Plaintiff had not engaged in
12  any substantial gainful activity since March 7, 2007, the date of
13  her reopened SSI application.  (AR 28.)  At step two, the ALJ
14  concluded that Plaintiff had the severe impairments of "facet
15  hypertrophy and levoscoliosis of the lumbosacral spine,
16  degenerative changes of the right knee, uterine fibroid, an
17  adjustment disorder with depressed mood[,] and borderline
18  intellectual functioning" and noted that "by July 2008, she is
19  obese."  (<u>Id.</u> (citations omitted).)  At step three, the ALJ found
20  that Plaintiff did not have an impairment or combination of
21  impairments that met or equaled any of the impairments in the
22  Listing.  (AR 30.)  At step four, the ALJ found that Plaintiff
23  had the RFC to perform "the full range of medium work as defined
24  in 20 CFR 416.967(c) (lift and carry 50 pounds occasionally and
25  25 pounds frequently, stand and/or walk for six out of eight
26  hours, and sit for six hours in an eight-hour workday)."  (AR
27  31.)  At step five, the ALJ found that Plaintiff was capable of
28  performing her past relevant work as a "Factory Helper" "as it is

1  generally performed throughout the national economy."  (AR 37-
2  38.)  The ALJ therefore concluded that Plaintiff had not been
3  under a disability since March 7, 2007, the date her reopened
4  application was filed.  (AR 38.)

5  **V.   DISCUSSION**

6       Plaintiff alleges that the ALJ erred in (1) concluding that
7  Plaintiff could perform her past relevant work as actually
8  performed; (2) concluding that Plaintiff could perform her past
9  relevant work as generally performed; and (3) analyzing
10 Plaintiff's mental impairments under Listing 12.05.  (J. Stip. at
11 4.)

12       **A.   The ALJ Properly Concluded that Plaintiff Could Perform**
13            **Her Past Relevant Work as Generally Performed**

14       Plaintiff asserts that the ALJ improperly concluded that
15 Plaintiff could perform her past relevant work as a factory
16 helper as actually performed (J. Stip. at 4-7) and as generally
17 performed (Id. at 7-11).  In response, Defendant argues that the
18 ALJ never concluded that Plaintiff could perform her past
19 relevant work as actually performed; instead, the ALJ properly
20 found that Plaintiff could perform her past relevant work as
21 generally performed in the national economy.  (Id. at 6-7, 8-10.)

22            1.  Applicable Law

23       Plaintiff has the burden or proving that her alleged
24 physical or mental impairments prevented her from engaging in her
25 previous occupation.  See Vertigan v. Halter, 260 F.3d 1044, 1051
26 (9th Cir. 2001).  "To determine whether a claimant has the
27 residual capacity to perform his past relevant work, the [ALJ]
28 must ascertain the demands of the claimant's former work and then

compare the demands with his present capacity." <u>Villa v.</u>
<u>Heckler</u>, 797 F.2d 794, 797-98 (9th Cir. 1986).  Plaintiff has the
burden of proving she was unable to return to her "former <u>type</u> of
work and not just to [her] former job." <u>Id.</u> (emphasis in
original); <u>see</u> 20 C.F.R. § 416.920(f); <u>Valencia v. Heckler</u>, 751
F.2d 1082, 1086-87 (9th Cir. 1985) (classifying work according to
isolated tasks not allowed).  "Former type" of work means the
general kind of work, that is, factory work, that Plaintiff used
to perform.  <u>See Villa</u>, 797 F.2d at 798.

"Work experience" is one of several vocational factors that
may be considered when the issue of disability cannot be
determined from the medical evidence alone.  <u>See</u> 20 C.F.R.
§ 416.960(b)(3).  "Work experience" means skills and abilities
the plaintiff had acquired through previous work and which showed
the type of work the plaintiff was capable of performing.  <u>Id.</u>
§ 416.965(a).  Work experience is relevant when it was performed
within the last 15 years, lasted long enough for the plaintiff to
learn to do it, and was substantially gainful activity.  <u>Id.</u>

2.  <u>Analysis</u>

Here, the ALJ did not conclude, as Plaintiff claims, that
she could perform past relevant work as <u>actually</u> performed.  The
ALJ found that Plaintiff "can perform her past relevant work as
<u>generally performed</u> throughout the national economy." (AR 38
(emphasis added).)  If the ALJ did find that she could perform
past relevant work as actually performed, the Commissioner does
not contest that the ALJ erred. (<u>See</u> J. Stip. at 6-7.)  Thus,
the Court does not address Plaintiff's contentions as to whether
she can perform her past relevant work as actually performed.

8

As to Plaintiff's second assertion, the ALJ properly concluded that Plaintiff could perform her past relevant work as a factory helper as generally performed.  Plaintiff argues that the Dictionary of Occupational Titles ("DOT") states that a factory helper requires level-one language development, see DOT 529.686-034, 1991 WL 674724, but she cannot communicate at that level because she is unable to understand, read, or speak English.  (J. Stip. at 7-8.)  Plaintiff contends that without vocational-expert testimony providing a persuasive basis for deviating from the DOT on the issue of language requirement, the ALJ could not properly find that Plaintiff could perform the factory-helper job as generally performed in the national economy.  (Id.)

At the outset of her testimony, the VE noted that Plaintiff had "a marginal education" and was a "non-English speaking person."  (AR 496.)  Later, the ALJ posed the following hypothetical to the VE:

> We have an opinion at Exhibit F-9 that the Claimant
> can do simple, repetitive tasks, mentally; and, at F-5,
> that the Claimant . . . could lift 50 pounds
> occasionally, 25 pounds frequently; stand and/or walk
> about six hours; sit about six hours; and, could, no more
> than occasionally, climb ladders, ropes, and scaffolds.
>
> If I found that the Claimant had that residual
> functional capacity, would the Claimant be able to return
> to her past work?

(AR 497.)  The VE responded in the affirmative:

> Yes, Your Honor.  The work as a factory helper in

9

the sugar and confectionary [sic] industry, as previously
stated, requires medium exertion, would have no
requirement for climbing ropes or scaffolds, and the work
is repetitive in nature.

It is unskilled; therefore, simple, and repetitive,
and in all ways, would be compatible with the
restrictions in your hypothetical.

(AR 497-98.)

In the first paragraph of his decision the ALJ noted that
Plaintiff had "a third grade education"[4] and "reports inability
to communicate in English." (AR 25.) With respect to step four
of the analysis, her ability to do past relevant work, he
concluded as follows:

The claimant is capable of performing her past
relevant work as a Factory Helper. This work does not
require the performance of work-related activities
precluded by her residual functional capacity (20 CFR
416.965).

. . . .

The vocational expert testified that the claimant's
past relevant work was that of a Factory Helper (D.O.T.
529.686-034) (medium and unskilled). The vocational
expert testified that with the residual functional
capacity described, the claimant can perform her past

---

[4]  Given Plaintiff's self-proclaimed limited education, the
VE found it "very strange" that Plaintiff had in fact passed a
cosmetology test that required ninth-grade reading skills. (AR
481, 496.)

> relevant work.   I   accept   the   vocational   expert's
> testimony and find that Ms. Landeros can perform her past
> relevant work as it is generally performed throughout the
> national economy.

(AR 37-38.)

The ALJ properly concluded that Plaintiff could perform her past relevant work as a factory helper as it is generally performed throughout the national economy.   Level-one language development is the lowest level of language development contemplated by the DOT, and it requires the following skills:

> READING: Recognize the meaning of 2,500 (two- or three-
> syllable) words.   Read at rate of 95-120 words per
> minute.   Compare similarities and differences between
> words and between series of numbers.
> WRITING: Print simple sentences containing subject, verb,
> and object, and series of numbers, names, and addresses.
> SPEAKING: Speak   simple   sentences,   using   normal   word
> order, and present and past tenses.

DOT, app. C — Components of the Definition Trailer, 1991 WL 688702.   As Defendant points out, to find that Plaintiff could not perform her past relevant work as a factory helper because it requires level-one language development (the lowest level, <u>see id.</u>; <u>Donahue v. Barnhart</u>, 279 F.3d 441, 444-45 (7th Cir. 2002) (noting that every job listed in the DOT requires at least level-one language skills)) and she does not speak or understand English would be to find that every illiterate or non-English-speaking plaintiff is per se disabled regardless of their work history.   Such a result is both "illogical and in direct

1  contradiction to Social Security regulations." <u>Meza v. Astrue</u>,

2  No. C-09-1402-EDL, 2011 WL 11499, at *21 (N.D. Cal. Jan. 4, 2011)

3  (citation omitted) (rejecting argument that illiterate, Spanish-

4  speaking Plaintiff incapable of performing work requiring level-

5  one language development, and collecting cases); <u>Donahue</u>, 279

6  F.3d at 445; <u>see also</u> 20 C.F.R. Pt. 404, Subpt. P, App. 2

7  § 202.16 (stating that a younger individual who is illiterate or

8  unable to communicate in English and who is unskilled or has no

9  prior work experience is not automatically disabled); <u>Pinto v.</u>

10 <u>Massanari</u>, 249 F.3d 840, 847 (9th Cir. 2001) ("A claimant is not

11 per se disabled if he or she is illiterate.").[5]  It also is

12 belied by Plaintiff's former gainful employment as a factory

13 helper.  <u>See Donahue</u>, 279 F.3d at 445 ("The vocational expert

14 obviously did not agree [that janitors must be literate] – nor

15 did Donahue's former employer . . . .  Illiteracy is not a

16 progressive disease.").

17      In <u>Pinto</u>, the Ninth Circuit held that an ALJ erred in noting

18 the claimant's inability to speak English in both his findings of

19 fact in step four of the disability analysis and his hypothetical

20 to the VE and failing to explain how the English-language

21 limitation "related to his finding that [the claimant] could

22 perform her past relevant work as generally performed."  249 F.3d

23 at 847.  <u>Pinto</u> is distinguishable.  As the Ninth Circuit

24 recognized, "it is unclear whether the ALJ should have considered

25

26      [5]  Nothing in the level-one language skills description
   requires that the skills be in English and not some other
27 language.  <u>But see Pinto</u>, 249 F.3d at 844 n.2 (noting but not
   reaching issue, and citing regulations tending to show that
28 skills must be able to be performed in English).

1  [the claimant's] language skills at all at step four, given that

2  [her] difficulties with language are independent of the

3  disability upon which she bases her claim." <u>Id.</u> at 847 n.5.

4  Nonetheless, in that case the ALJ erred because he "clearly did

5  take [the claimant's] illiteracy into account [at step four] and

6  presented it in his hypothetical to the vocational expert." <u>Id.</u>

7  Here, in contrast, the ALJ did not include Plaintiff's language

8  limitations in his hypothetical or in his step-four analysis.

9  Thus, the ALJ had no duty to explain how those limitations

10 affected his finding that she could perform her past relevant

11 work as generally performed.  Moreover, Plaintiff's language

12 limitation was not one of the disabilities upon which Plaintiff

13 based her claims.  (<u>See</u> AR 83 (listing various physical and

14 mental disabilities but not mentioning inability to speak

15 English).)  Thus, the ALJ did not err in not addressing it.  <u>See</u>

16 <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995) (claimant

17 has burden to produce evidence regarding claimed disability);

18 <u>Cleveland v. Astrue</u>, No. C 10-5348 MEJ, 2011 WL 3443794, at *24

19 (N.D. Cal. Aug. 8, 2011) (finding that ALJ did not err in failing

20 to address alleged impairments plaintiff did not claim in

21 disability application or raise at hearing).

22      Furthermore, during the hearing Plaintiff's attorney cross-

23 examined the VE but did not challenge the VE's representation

24 that her testimony comported with the DOT.  (AR 498-99.)  The VE

25 was clearly aware of Plaintiff's language limitations, as she

26 specifically noted during her testimony that Plaintiff was a

27 "non-English speaking person." (AR 496.)  The VE testified that

28 Plaintiff's past relevant work was classified by the DOT as

1  "factory helper"; when asked by the ALJ if Plaintiff's

2  hypothetical RFC allowing her to do medium work would permit her

3  to return to her past work, she testified that the "factory

4  helper" job as listed in the DOT would "in all ways" be

5  compatible with Plaintiff's RFC.  (AR 496, 497-98.)  The ALJ's

6  reliance on the VE's testimony was thus proper because her

7  testimony was uncontradicted.  See Wentz v. Comm'r, Soc. Sec.

8  Admin., 401 F. App'x 189, 192 (9th Cir. 2010) (ALJ did not err in

9  failing to provide explanation of alleged conflict between VE

10 testimony and DOT because ALJ asked VE to identify conflicts, VE

11 identified none, and plaintiff's attorney cross-examined VE but

12 did not challenge VE's representation that her testimony

13 comported with DOT); Solorzano v. Astrue, No. 5:11-cv-00369-PJW,

14 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012) (rejecting

15 plaintiff's argument that "apparent conflicts" existed between

16 VE's testimony and DOT in part because plaintiff's counsel failed

17 to question VE about any such conflicts).  Accordingly, the ALJ

18 met his obligations under Massachi v. Astrue, 486 F.3d 1149, 1152

19 (9th Cir. 2007), and SSR 00-4p to investigate potential conflicts

20 with the DOT, and his reliance on the VE's testimony was proper.

21 See Wentz, 401 F. App'x at 192; Mickelson-Wurm v. Comm'r, Soc.

22 Sec. Admin., 285 F. App'x 482, 486 (9th Cir. 2008) ("The ALJ must

23 clarify the discrepancy in the opinion only where there is an

24 apparent unresolved conflict that arises between the vocational

25 expert's testimony and the DOT." (emphasis in original)).

26      **B.   The ALJ Properly Concluded that Plaintiff Did Not Meet**

27           **the Requirements of Listing 12.05**

28      Plaintiff asserts that the ALJ improperly analyzed her

14

mental impairments under Listing 12.05 ("mental retardation");
Plaintiff asserts that she met the requirements of Listing 12.05
because she had an IQ of 67, was educated only through the third
grade, and "cannot communicate in English." (J. Stip. at 12-14.)
In response, Defendant argues that the ALJ's finding that
Plaintiff did not meet Listing 12.05 was supported by substantial
evidence.  (J. Stip. at 14-17.)

      1.   <u>Applicable Law</u>

A claimant must be found disabled if her impairment
satisfies Listing 12.05 and has existed or can be expected to
exist for at least 12 months.  <u>Fanning v. Bowen</u>, 827 F.2d 631,
634 (9th Cir. 1987).  The claimant has the initial burden to
prove an impairment under an identified Listing.  <u>Sullivan v.
Zebley</u>, 493 U.S. 521, 530-33, 110 S. Ct. 885, 891-92, 107 L. Ed.
2d 967 (1990).

A claimant can meet Listing 12.05 with a valid verbal,
performance, or full-scale IQ of 59 or less.  20 C.F.R. Pt. 404,
Subpt. P, App. 1, § 12.05(B).  To meet Listing 12.05 with an IQ
between 60 and 70, a claimant must have "a physical or other
mental impairment imposing an additional and significant work-
related limitation of function."  <u>Id.</u> § 12.05(C).  Alternatively,
a claimant can meet Listing 12.05 with an IQ of 60-70 when it
results in at least two of the following:

    1.   Marked restriction of activities of daily living;
       or

    2.   Marked  difficulties  in  maintaining social
       functioning; or

    3.   Marked difficulties in maintaining concentration,

1  persistence, or pace; or

2  4.  Repeated episodes of decompensation, each of

3  extended duration.

4  Id. § 12.05(D).

5  In evaluating a claimant's ability to meet Listing 12.05,

6  the ALJ need not accept the claimant's IQ scores as valid and may

7  rely on external evidence, such as a claimant's participation in

8  activities inconsistent with her IQ scores or evidence of

9  malingering, to find that the claimant does not meet the Listing.

10  See Thresher v. Astrue, 283 F. App'x 473, 475 & n.6 (9th Cir.

11  2008) (remanding for clarification because ALJ did not reference

12  Listing 12.05 in rejecting claimant's claims of mental

13  retardation).  In relying on external evidence, the ALJ must

14  explain how that evidence affects the validity of the IQ score.

15  See id.; Gomez v. Astrue, 695 F. Supp. 2d 1049, 1057 (C.D. Cal.

16  2010).

17  An ALJ's decision that a plaintiff did not meet a Listing

18  must be upheld if it was supported by "substantial evidence."

19  See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th

20  Cir. 2006).  Substantial evidence is "more than a mere scintilla

21  but less than a preponderance; it is such relevant evidence as a

22  reasonable mind might accept as adequate to support a

23  conclusion."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir.

24  1997).  When evidence was susceptible to more than one rational

25  interpretation, the Court must uphold the ALJ's conclusion as

26  long as substantial evidence existed to support it.  Id.

27  2.  Analysis

28  Plaintiff has not identified exactly how she contends she

16

satisfied Listing 12.05(C) or (D).  She simply insists that
because she had an IQ of 67 on one test she was mentally
retarded.  (J. Stip. at 12-13.)  But under 12.05(C) or (D), more
was needed.  Plaintiff's full-scale IQ of 67 and her scores and
intellectual functioning were in the "borderline range."  (AR
294-95.)  The ALJ determined that beyond Plaintiff's IQ score,
the other evidence in the record did not support a finding that
Plaintiff met Listing 12.05; he discounted her IQ score based on
the lack of evidence in the record of subaverage general
intellectual functioning coupled with evidence of malingering.
(AR 30-31.)  By expressly mentioning Listing 12.05 and explaining
why he found it did not apply, the ALJ met his burden to explain
why the IQ score was invalid based on other evidence in the
record.  See Gomez, 695 F. Supp. 2d at 1057; cf. Thresher, 283 F.
App'x at 475 (remanding for clarification because ALJ did not
mention Listing 12.05).

     Substantial evidence supported the ALJ's conclusion.  Dr.
Jeannette Townsend's August 5, 2008 report indicated that
Plaintiff did not demonstrate evidence of mental retardation and
was capable of caring for herself and her son and functioning
normally in society.  (AR 294.)  She noted that Plaintiff drove
herself to her appointment and arrived on time, was able to
provide background information, was an adequate historian, and
listened to and followed the doctor's instructions.  (AR 292.)
Plaintiff's thinking was organized, her insight was fair, and her
comprehension and judgment for simple practical situations were
fair.  (AR 293-94.)  Plaintiff also indicated that she cared for
her 15-year-old son, performed household chores, ran errands,

1  shopped, and cooked.  (AR 294.)

2      In addition to Dr. Townsend's findings, substantial other
3  evidence in the record supported the ALJ's conclusion.  On March
4  28, 2007, Plaintiff was evaluated at Pacific Clinics by therapist
5  Irma Rivera and Dr. Pat Sandoval, who found that her
6  "Interactional Style" was "culturally congruent," her memory was
7  "unimpaired," her "fund of knowledge" was "average," her affect
8  was "appropriate," and she had no apparent perceptual or thought
9  content disturbances.  (AR 277-78.)  They also found that her
10  thought associations were "unimpaired"; her concentration,
11  abstractions, and judgments were "intact"; and her insight was
12  "adequate."  (AR 277.)  On August 14, 2007, Plaintiff was again
13  evaluated at Pacific Clinics, by Nurse Practitioner Janet
14  Gourley, who found that her sensory and intellectual functioning
15  were "unimpaired," her vocabulary was "good," and her thought
16  processes were "intact."  (AR 282.)  On July 26, 2008, Dr. Sean
17  To found that Plaintiff was "appropriately oriented," her memory
18  "appeared to be average," and she "appeared to be in no acute
19  [mental] distress."  (AR 286.)  On September 12, 2008, Dr. F.L.
20  Williams performed a psychiatric examination of Plaintiff.  (AR
21  305-16.)  He found that her "intellectual functioning is in the
22  borderline range," her "memory is low compared to other people
23  her age," and her "general fund of information is low," but he
24  also found that her "affect was appropri[a]te in degree and kind"
25  and she was able to care for herself and engage in normal social
26  activities.  (AR 315.)  He specifically did not indicate that she
27  had any symptoms of mental retardation within the meaning of
28  Listing 12.05.  (See AR 305, 308.)  Moreover, as the ALJ noted,

1  evidence in the record showed that Plaintiff simulated or

2  exaggerated her symptoms.  (See AR 393 (noting that Plaintiff "is

3  malingering, simulated or exaggerated pain").)

4        Even if Plaintiff's IQ score of 67 were valid, she did not

5  demonstrate, as was her burden, that she met the requirements of

6  Listing 12.05(C) or (D).  Subsection (C) requires, in addition to

7  the necessary IQ score, "a physical or other mental impairment

8  imposing an additional and significant work-related limitation of

9  function" (emphasis added).  This requirement can be met by the

10 ALJ's finding that the claimant has a severe impairment.  Gomez,

11 695 F. Supp. 2d at 1062; 20 C.F.R. Pt. 404, Subpt. P, App. 1, §

12 12.00(A); see also Fanning, 827 F.2d at 633 ("[A]n impairment

13 imposes a significant work-related limitation of function when

14 its effect on a claimant's ability to perform basic work

15 activities is more than slight or minimal.").  Here, however, the

16 ALJ found that Plaintiff's impairments "in combination[] are

17 severe."  (AR 28.)  The ALJ carefully went through each

18 impairment and explained why none was severe by itself.  (AR 28-

19 31.)  Given that the Listing requires "a" significant impairment,

20 it is not at all clear that the ALJ's finding satisfies §

21 12.00(A).  Moreover, the ALJ found that Plaintiff could perform

22 medium-level work, a finding Plaintiff does not directly

23 challenge.  While cases have held that claimants who are limited

24 to light or sedentary work satisfy the 12.05(C) requirement, see,

25 e.g., Markle v. Barnhart, 324 F.3d 182, 188 (3d Cir. 2003)

26 (claimant's impairments "limit[ing] him to some forms of light

27 work constitute impairments 'imposing additional and significant

28 work-related limitations of function'"); Nieves v. Sec'y of

1   Health & Human Servs., 775 F.2d 12, 13-14 (1st Cir. 1985)

2   (claimant who "could not perform the full range of sedentary

3   work" satisfied second prong of Listing 12.05(C)); Mowery v.

4   Heckler, 771 F.2d 966, 973 (6th Cir. 1985) (second prong

5   satisfied when claimant limited to light or sedentary work),

6   apparently none have held that a claimant who can perform medium

7   work does.  Accordingly, Plaintiff has not met her burden of

8   showing that she satisfied Listing 12.05(C).  Similarly, she has

9   not even attempted to explain how she can satisfy subsection (D),

10  and nothing in the record calls into question the ALJ's

11  determination that she did not.

12      Plaintiff argues that because she "could not complete school

13  past the third grade, nor did she possess the capability to learn

14  the English language," she was mentally impaired.  (J. Stip. at

15  13.)  But the evidence of record, and the evidence Plaintiff

16  cites in support of her argument, merely demonstrates that

17  Plaintiff had a third-grade education and did not speak English.[6]

18  (AR 25-26, 286, 292-96, 497.)  It does not demonstrate that she

19  was unable to complete school past the third grade or learn

20  English.

21      Plaintiff further argues that according to the Diagnostic

22  and Statistical Manual of Mental Disorders ("DSM"), an individual

23  with an IQ of 50-55 to approximately 70 may be assessed as

24  mentally retarded.  (J. Stip. at 12.)  But the DSM notes that

25  "Mental Retardation would not be diagnosed in an individual with

26

27  _____

28      [6]  As noted, the evidence also showed that she had passed a
    test that required ninth-grade reading skills.  (AR 496.)

20

1 an IQ lower than 70 if there are no significant deficits or

2 impairments in adaptive functioning." <u>See</u> Am. Psychiatric Ass'n,

3 <u>Diagnostic and Statistical Manual of Mental Disorders</u> 42 (4th ed.

4 2000).  This is similar to Listing 12.05(C) and (D), which allows

5 a claimant to meet the Listing with an IQ score of 60-70 only

6 when evidence of significant impairment exists beyond the IQ

7 score itself.  Here, as noted above, substantial evidence

8 supported the ALJ's finding that Plaintiff was not mentally

9 retarded within the meaning of Listing 12.05 because no evidence

10 of mental retardation existed other than her IQ score of 67,

11 which did not comport with the other evidence in the record.

12 Under the DSM's similar standard, the ALJ's conclusion was also

13 proper.[7]

14

15

16

17

18         [7]  Plaintiff briefly argues that "[t]o the extent that the

19 Commissioner may read the listing as requiring deficits in
adaptive functioning, the ALJ should have requested that Dr.

20 Townsend administer the Vineland test for adaptive functioning,"
but she fails to elaborate on this argument or cite to evidence

21 in the record in support of it.  (J. Stip. at 13.)  Plaintiff had
the burden to prove her impairment under Listing 12.05.  The ALJ

22 had sufficient evidence to make a proper determination in regards
to Plaintiff's restrictions and limitations, as discussed above,

23 and he was under no obligation to instruct Dr. Townsend to
administer further testing when Plaintiff failed to carry her

24 burden of proof.  <u>See Ukolov v. Barnhart</u>, 420 F.3d 1002, 1004

25 (9th Cir. 2005) (noting that "[t]he claimant carries the initial
burden of proving a disability," and "[f]ailure to prove

26 disability justifies a denial of benefits"); <u>Bray v. Comm'r of
Soc. Sec. Admin.</u>, 554 F.3d 1219, 1222 (9th Cir. 2009) ("The

27 burden of proof is on the claimant at steps one through four . .

28 . .").

1   **VI.   CONCLUSION**

2          Consistent with the foregoing, and pursuant to sentence four

3   of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered

4   AFFIRMING the decision of the Commissioner and dismissing this

5   action with prejudice.   IT IS FURTHER ORDERED that the Clerk

6   serve copies of this Order and the Judgment on counsel for both

7   parties.

8

9

10  DATED: July 6, 2012                    _____

11                                         JEAN P. ROSENBLUTH
                                           U.S. Magistrate Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25  _____

26        [8]  This sentence provides: "The [district] court shall have
    power to enter, upon the pleadings and transcript of the record,
27  a judgment affirming, modifying, or reversing the decision of the
    Commissioner of Social Security, with or without remanding the
28  cause for a rehearing."

                                    22