O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ELVIA LANDEROS,              )    Case No. CV 11-7156-JPR
                             )
           Plaintiff,        )    MEMORANDUM OPINION AND ORDER
                             )    AFFIRMING THE COMMISSIONER
      v.                     )
                             )
MICHAEL J. ASTRUE,           )
Commissioner of the Social   )
Security Administration,     )
                             )
           Defendant.        )
_____)

**I.   PROCEEDINGS**

     Plaintiff seeks review of the Commissioner's final decision
denying her application for Supplemental Security Income ("SSI").
The parties consented to the jurisdiction of the undersigned U.S.
Magistrate Judge pursuant to 28 U.S.C. § 636(c).  This matter is
before the Court on the parties' Joint Stipulation, filed June 5,
2012.  The Court has taken the Joint Stipulation under submission
without oral argument.  For the reasons stated below, the
Commissioner's decision is affirmed and this action is dismissed.

## II.   BACKGROUND

Plaintiff was born on September 17, 1962. (Administrative Record ("AR") 76.)  She has a third-grade education and does not speak English.  (AR 286, 293, 479-81.)  She claims to have been disabled since November 30, 1997, because of several impairments, including a fractured neck, knee, shoulder, and hip; "severe" anxiety and depression; stomach ulcer; shortness of breath; and sinus problems.  (AR 83.)

On April 7, 2006, Plaintiff filed an initial application for SSI.  (AR 25.)  It was denied based on "excess resources" because the ALJ determined she owned property in Mexico.  (Id.)  On March 7, 2007, Plaintiff filed a second SSI application.  (Id.)  That application was denied because the ALJ found that she was not a citizen or legal resident of the United States.  (Id.)  While her appeal of that decision was still pending, Plaintiff protectively filed a third application for SSI, on May 8, 2008.[1]  (Id.)  After that application was denied, she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 14, 2010.  (AR 477-507.)  Plaintiff, who was represented by counsel, testified at the hearing with the assistance of a Spanish-language interpreter; vocational expert ("VE") Rheta B. King also testified.  (AR 25, 479-507.)[2]

---

[1]   The AR does not contain Plaintiff's SSI applications, but other documents in the record reflect that they were filed on April 7, 2006, March 7, 2007, and May 8, 2008. (See, e.g., AR 25, 71, 116-27.)

[2] Plaintiff also filed several applications for Disability Insurance Benefits, all of which were denied. (See AR 25.)  She does not challenge those denials here. (See AR 25, 57.)

1     On November 19, 2010, the ALJ denied Plaintiff's claim.  He

2  first found that Plaintiff was a lawful permanent resident of the

3  United States and thus her March 7, 2007 SSI application was

4  erroneously denied; he therefore reopened that application and

5  conducted his analysis based on the March 7, 2007 filing date.

6  (AR 26.)  He then determined that Plaintiff had the severe

7  impairments of "facet hypertrophy and levoscoliosis of the

8  lumbosacral spine, degenerative changes of the right knee,

9  uterine fibroid, an adjustment disorder with depressed mood[,]

10 and borderline intellectual functioning" and noted that "by July

11 2008, she is obese." (AR 28 (citations omitted).)  He found,

12 however, that she retained the residual functional capacity

13 ("RFC")[3] to perform "the full range of medium work as defined in

14 20 CFR 416.967(c) (lift and carry 50 pounds occasionally and 25

15 pounds frequently, stand and/or walk for six out of eight hours,

16 and sit for six hours in an eight-hour workday)" (AR 31); thus,

17 she was not disabled (AR 38).

18     On January 10, 2011, after retaining a new attorney,

19 Plaintiff requested review by the Appeals Council.  (AR 16-21.)

20 On June 1, 2011, Plaintiff submitted an additional brief to the

21 Council.  (AR 468-70.)  On July 8, 2011, the Council considered

22 the additional brief but denied Plaintiff's request for review.

23 (AR 5-7.)  The Council ordered that the additional brief be made

24 part of the administrative record.  (AR 10.)  This action

25

26         [3]  RFC is what a claimant can still do despite existing

27 exertional and nonexertional limitations.  20 C.F.R.
   § 416.945(a); see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5

28 (9th Cir. 1989).

1  followed.

2  **III.  STANDARD OF REVIEW**

3        Pursuant to 42 U.S.C. § 405(g), a district court may review
4  the Commissioner's decision to deny benefits.  The Commissioner's
5  findings and decision should be upheld if they are free of legal
6  error and are supported by substantial evidence based on the
7  record as a whole.  § 405(g); Richardson v. Perales, 402 U.S.
8  389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v.
9  Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence
10  means such evidence as a reasonable person might accept as
11  adequate to support a conclusion.  Richardson, 402 U.S. at 401;
12  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It
13  is more than a scintilla but less than a preponderance.
14  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.
15  Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether
16  substantial evidence supports a finding, the reviewing court
17  "must review the administrative record as a whole, weighing both
18  the evidence that supports and the evidence that detracts from
19  the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715,
20  720 (9th Cir. 1998).  "If the evidence can reasonably support
21  either affirming or reversing," the reviewing court "may not
22  substitute its judgment" for that of the Commissioner.  Id. at
23  720-21.

24  **IV.  THE EVALUATION OF DISABILITY**

25        People are "disabled" for purposes of receiving Social
26  Security benefits if they are unable to engage in any substantial
27  gainful activity owing to a severe physical or mental impairment
28  that is expected to result in death or which has lasted, or is

4

expected to last, for a continuous period of at least 12 months.
42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257
(9th Cir. 1992).

### A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in
assessing whether a claimant is disabled.  20 C.F.R.
§ 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir.
1995) (as amended Apr. 9, 1996).  In the first step, the ALJ must
determine whether the claimant is currently engaged in
substantial gainful activity; if so, the claimant is not disabled
and the claim is denied.  § 416.920(a)(4)(i).  If the claimant is
not engaged in substantial gainful activity, the second step
requires the ALJ to determine whether the claimant has a "severe"
impairment or combination of impairments significantly limiting
her ability to do basic work activities; if not, a finding of
nondisability is made and the claim must be denied.
§ 416.920(a)(4)(ii).  If the claimant has a "severe" impairment
or combination of impairments, the third step requires the ALJ to
determine whether the impairment or combination of impairments
meets or equals an impairment in the Listing of Impairments
("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix
1; if so, disability is conclusively presumed and benefits are
awarded.  § 416.920(a)(4)(iii).  If the claimant's impairment or
combination of impairments does not meet or equal an impairment
in the Listing, the fourth step requires the ALJ to determine
whether the claimant has sufficient RFC to perform her past work;
if so, the claimant is not disabled and the claim is denied.
§ 416.920(a)(4)(iv).  The claimant has the burden of proving that

1  she is unable to perform past relevant work.  <u>Drouin</u>, 966 F.2d at

2  1257.  If the claimant meets that burden, a prima facie case of

3  disability is established.  <u>Id.</u>  If that happens or if the

4  claimant has no past relevant work, the ALJ then bears the burden

5  of establishing that the claimant is not disabled because she can

6  perform other substantial gainful work in the national economy.

7  § 416.920(a)(4)(v).  That determination comprises the fifth and

8  final step in the sequential analysis.  § 416.920; <u>Lester</u>, 81

9  F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

10        **B.   The ALJ's Application of the Five-Step Process**

11        At step one, the ALJ found that Plaintiff had not engaged in

12  any substantial gainful activity since March 7, 2007, the date of

13  her reopened SSI application.  (AR 28.)  At step two, the ALJ

14  concluded that Plaintiff had the severe impairments of "facet

15  hypertrophy and levoscoliosis of the lumbosacral spine,

16  degenerative changes of the right knee, uterine fibroid, an

17  adjustment disorder with depressed mood[,] and borderline

18  intellectual functioning" and noted that "by July 2008, she is

19  obese."  (<u>Id.</u> (citations omitted).)  At step three, the ALJ found

20  that Plaintiff did not have an impairment or combination of

21  impairments that met or equaled any of the impairments in the

22  Listing.  (AR 30.)  At step four, the ALJ found that Plaintiff

23  had the RFC to perform "the full range of medium work as defined

24  in 20 CFR 416.967(c) (lift and carry 50 pounds occasionally and

25  25 pounds frequently, stand and/or walk for six out of eight

26  hours, and sit for six hours in an eight-hour workday)."  (AR

27  31.)  At step five, the ALJ found that Plaintiff was capable of

28  performing her past relevant work as a "Factory Helper" "as it is

6

generally performed throughout the national economy." (AR 37–38.)  The ALJ therefore concluded that Plaintiff had not been under a disability since March 7, 2007, the date her reopened application was filed.  (AR 38.)

**V.   DISCUSSION**

Plaintiff alleges that the ALJ erred in (1) concluding that Plaintiff could perform her past relevant work as actually performed; (2) concluding that Plaintiff could perform her past relevant work as generally performed; and (3) analyzing Plaintiff's mental impairments under Listing 12.05. (J. Stip. at 4.)

**A.   The ALJ Properly Concluded that Plaintiff Could Perform Her Past Relevant Work as Generally Performed**

Plaintiff asserts that the ALJ improperly concluded that Plaintiff could perform her past relevant work as a factory helper as actually performed (J. Stip. at 4-7) and as generally performed (Id. at 7-11).  In response, Defendant argues that the ALJ never concluded that Plaintiff could perform her past relevant work as actually performed; instead, the ALJ properly found that Plaintiff could perform her past relevant work as generally performed in the national economy.  (Id. at 6-7, 8-10.)

1.   Applicable Law

Plaintiff has the burden or proving that her alleged physical or mental impairments prevented her from engaging in her previous occupation.  See Vertigan v. Halter, 260 F.3d 1044, 1051 (9th Cir. 2001).  "To determine whether a claimant has the residual capacity to perform his past relevant work, the [ALJ] must ascertain the demands of the claimant's former work and then

7

1  compare the demands with his present capacity." <u>Villa v.</u>

2  <u>Heckler</u>, 797 F.2d 794, 797-98 (9th Cir. 1986).  Plaintiff has the

3  burden of proving she was unable to return to her "former <u>type</u> of

4  work and not just to [her] former job." <u>Id.</u> (emphasis in

5  original); <u>see</u> 20 C.F.R. § 416.920(f); <u>Valencia v. Heckler</u>, 751

6  F.2d 1082, 1086-87 (9th Cir. 1985) (classifying work according to

7  isolated tasks not allowed).  "Former type" of work means the

8  general kind of work, that is, factory work, that Plaintiff used

9  to perform.  <u>See</u> <u>Villa</u>, 797 F.2d at 798.

10       "Work experience" is one of several vocational factors that

11  may be considered when the issue of disability cannot be

12  determined from the medical evidence alone.  <u>See</u> 20 C.F.R.

13  § 416.960(b)(3).  "Work experience" means skills and abilities

14  the plaintiff had acquired through previous work and which showed

15  the type of work the plaintiff was capable of performing.  <u>Id.</u>

16  § 416.965(a).  Work experience is relevant when it was performed

17  within the last 15 years, lasted long enough for the plaintiff to

18  learn to do it, and was substantially gainful activity.  <u>Id.</u>

19              2.  <u>Analysis</u>

20       Here, the ALJ did not conclude, as Plaintiff claims, that

21  she could perform past relevant work as <u>actually</u> performed.  The

22  ALJ found that Plaintiff "can perform her past relevant work as

23  <u>generally performed</u> throughout the national economy." (AR 38

24  (emphasis added).)  If the ALJ did find that she could perform

25  past relevant work as actually performed, the Commissioner does

26  not contest that the ALJ erred.  (<u>See</u> J. Stip. at 6-7.)  Thus,

27  the Court does not address Plaintiff's contentions as to whether

28  she can perform her past relevant work as actually performed.

1    As to Plaintiff's second assertion, the ALJ properly
2 concluded that Plaintiff could perform her past relevant work as
3 a factory helper as generally performed.  Plaintiff argues that
4 the Dictionary of Occupational Titles ("DOT") states that a
5 factory helper requires level-one language development, see DOT
6 529.686-034, 1991 WL 674724, but she cannot communicate at that
7 level because she is unable to understand, read, or speak
8 English. (J. Stip. at 7-8.)  Plaintiff contends that without
9 vocational-expert testimony providing a persuasive basis for
10 deviating from the DOT on the issue of language requirement, the
11 ALJ could not properly find that Plaintiff could perform the
12 factory-helper job as generally performed in the national
13 economy. (Id.)

14    At the outset of her testimony, the VE noted that Plaintiff
15 had "a marginal education" and was a "non-English speaking
16 person." (AR 496.)  Later, the ALJ posed the following
17 hypothetical to the VE:

18        We have an opinion at Exhibit F-9 that the Claimant
19    can do simple, repetitive tasks, mentally; and, at F-5,
20    that the Claimant . . . could lift 50 pounds
21    occasionally, 25 pounds frequently; stand and/or walk
22    about six hours; sit about six hours; and, could, no more
23    than occasionally, climb ladders, ropes, and scaffolds.

24        If I found that the Claimant had that residual
25    functional capacity, would the Claimant be able to return
26    to her past work?

27 (AR 497.)  The VE responded in the affirmative:

28        Yes, Your Honor.  The work as a factory helper in

9

the sugar and confectionary [sic] industry, as previously stated, requires medium exertion, would have no requirement for climbing ropes or scaffolds, and the work is repetitive in nature.

It is unskilled; therefore, simple, and repetitive, and in all ways, would be compatible with the restrictions in your hypothetical.

(AR 497-98.)

In the first paragraph of his decision the ALJ noted that Plaintiff had "a third grade education"[4] and "reports inability to communicate in English." (AR 25.) With respect to step four of the analysis, her ability to do past relevant work, he concluded as follows:

The claimant is capable of performing her past relevant work as a Factory Helper. This work does not require the performance of work-related activities precluded by her residual functional capacity (20 CFR 416.965).

. . . .

The vocational expert testified that the claimant's past relevant work was that of a Factory Helper (D.O.T. 529.686-034) (medium and unskilled). The vocational expert testified that with the residual functional capacity described, the claimant can perform her past

---

[4]   Given Plaintiff's self-proclaimed limited education, the VE found it "very strange" that Plaintiff had in fact passed a cosmetology test that required ninth-grade reading skills. (AR 481, 496.)

1   relevant   work.     I   accept   the   vocational   expert's

2   testimony and find that Ms. Landeros can perform her past

3   relevant work as it is generally performed throughout the

4   national economy.

5   (AR 37-38.)

6        The ALJ properly concluded that Plaintiff could perform her

7   past relevant work as a factory helper as it is generally

8   performed throughout the national economy.  Level-one language

9   development is the lowest level of language development

10  contemplated by the DOT, and it requires the following skills:

11  READING: Recognize the meaning of 2,500 (two- or three-

12  syllable)  words.    Read at rate of 95-120  words  per

13  minute.   Compare  similarities  and  differences  between

14  words and between series of numbers.

15  WRITING: Print simple sentences containing subject, verb,

16  and object, and series of numbers, names, and addresses.

17  SPEAKING:  Speak  simple  sentences,  using  normal  word

18  order, and present and past tenses.

19  DOT, app. C — Components of the Definition Trailer, 1991 WL

20  688702.  As Defendant points out, to find that Plaintiff could

21  not perform her past relevant work as a factory helper because it

22  requires level-one language development (the lowest level, see

23  id.; Donahue v. Barnhart, 279 F.3d 441, 444-45 (7th Cir. 2002)

24  (noting that every job listed in the DOT requires at least level-

25  one language skills)) and she does not speak or understand

26  English would be to find that every illiterate or non-English-

27  speaking plaintiff is per se disabled regardless of their work

28  history.  Such a result is both "illogical and in direct

11

contradiction to Social Security regulations." <u>Meza v. Astrue</u>,
No. C-09-1402-EDL, 2011 WL 11499, at *21 (N.D. Cal. Jan. 4, 2011)
(citation omitted) (rejecting argument that illiterate, Spanish-
speaking Plaintiff incapable of performing work requiring level-
one language development, and collecting cases); <u>Donahue</u>, 279
F.3d at 445; <u>see also</u> 20 C.F.R. Pt. 404, Subpt. P, App. 2
§ 202.16 (stating that a younger individual who is illiterate or
unable to communicate in English and who is unskilled or has no
prior work experience is not automatically disabled); <u>Pinto v.
Massanari</u>, 249 F.3d 840, 847 (9th Cir. 2001) ("A claimant is not
per se disabled if he or she is illiterate.").[5]  It also is
belied by Plaintiff's former gainful employment as a factory
helper.  <u>See</u> <u>Donahue</u>, 279 F.3d at 445 ("The vocational expert
obviously did not agree [that janitors must be literate] – nor
did Donahue's former employer . . . .  Illiteracy is not a
progressive disease.").

        In <u>Pinto</u>, the Ninth Circuit held that an ALJ erred in noting
the claimant's inability to speak English in both his findings of
fact in step four of the disability analysis and his hypothetical
to the VE and failing to explain how the English-language
limitation "related to his finding that [the claimant] could
perform her past relevant work as generally performed."  249 F.3d
at 847.  <u>Pinto</u> is distinguishable.  As the Ninth Circuit
recognized, "it is unclear whether the ALJ should have considered

---

        [5] Nothing in the level-one language skills description
requires that the skills be in English and not some other
language.  <u>But see</u> <u>Pinto</u>, 249 F.3d at 844 n.2 (noting but not
reaching issue, and citing regulations tending to show that
skills must be able to be performed in English).

1 [the claimant's] language skills at all at step four, given that
2 [her] difficulties with language are independent of the
3 disability upon which she bases her claim." Id. at 847 n.5.
4 Nonetheless, in that case the ALJ erred because he "clearly did
5 take [the claimant's] illiteracy into account [at step four] and
6 presented it in his hypothetical to the vocational expert." Id.
7 Here, in contrast, the ALJ did not include Plaintiff's language
8 limitations in his hypothetical or in his step-four analysis.
9 Thus, the ALJ had no duty to explain how those limitations
10 affected his finding that she could perform her past relevant
11 work as generally performed.  Moreover, Plaintiff's language
12 limitation was not one of the disabilities upon which Plaintiff
13 based her claims.  (See AR 83 (listing various physical and
14 mental disabilities but not mentioning inability to speak
15 English).)  Thus, the ALJ did not err in not addressing it.  See
16 Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (claimant
17 has burden to produce evidence regarding claimed disability);
18 Cleveland v. Astrue, No. C 10-5348 MEJ, 2011 WL 3443794, at *24
19 (N.D. Cal. Aug. 8, 2011) (finding that ALJ did not err in failing
20 to address alleged impairments plaintiff did not claim in
21 disability application or raise at hearing).

22     Furthermore, during the hearing Plaintiff's attorney cross-
23 examined the VE but did not challenge the VE's representation
24 that her testimony comported with the DOT.  (AR 498-99.)  The VE
25 was clearly aware of Plaintiff's language limitations, as she
26 specifically noted during her testimony that Plaintiff was a
27 "non-English speaking person."  (AR 496.)  The VE testified that
28 Plaintiff's past relevant work was classified by the DOT as

"factory helper"; when asked by the ALJ if Plaintiff's hypothetical RFC allowing her to do medium work would permit her to return to her past work, she testified that the "factory helper" job as listed in the DOT would "in all ways" be compatible with Plaintiff's RFC. (AR 496, 497-98.)  The ALJ's reliance on the VE's testimony was thus proper because her testimony was uncontradicted.  See Wentz v. Comm'r, Soc. Sec. Admin., 401 F. App'x 189, 192 (9th Cir. 2010) (ALJ did not err in failing to provide explanation of alleged conflict between VE testimony and DOT because ALJ asked VE to identify conflicts, VE identified none, and plaintiff's attorney cross-examined VE but did not challenge VE's representation that her testimony comported with DOT); Solorzano v. Astrue, No. 5:11-cv-00369-PJW, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012) (rejecting plaintiff's argument that "apparent conflicts" existed between VE's testimony and DOT in part because plaintiff's counsel failed to question VE about any such conflicts).  Accordingly, the ALJ met his obligations under Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007), and SSR 00-4p to investigate potential conflicts with the DOT, and his reliance on the VE's testimony was proper. See Wentz, 401 F. App'x at 192; Mickelson-Wurm v. Comm'r, Soc. Sec. Admin., 285 F. App'x 482, 486 (9th Cir. 2008) ("The ALJ must clarify the discrepancy in the opinion only where there is an apparent unresolved conflict that arises between the vocational expert's testimony and the DOT." (emphasis in original)).

> **B.   The ALJ Properly Concluded that Plaintiff Did Not Meet the Requirements of Listing 12.05**

Plaintiff asserts that the ALJ improperly analyzed her

14

mental impairments under Listing 12.05 ("mental retardation");
Plaintiff asserts that she met the requirements of Listing 12.05
because she had an IQ of 67, was educated only through the third
grade, and "cannot communicate in English." (J. Stip. at 12-14.)
In response, Defendant argues that the ALJ's finding that
Plaintiff did not meet Listing 12.05 was supported by substantial
evidence. (J. Stip. at 14-17.)

   1. <u>Applicable Law</u>

 A claimant must be found disabled if her impairment
satisfies Listing 12.05 and has existed or can be expected to
exist for at least 12 months. <u>Fanning v. Bowen</u>, 827 F.2d 631,
634 (9th Cir. 1987). The claimant has the initial burden to
prove an impairment under an identified Listing. <u>Sullivan v.
Zebley</u>, 493 U.S. 521, 530-33, 110 S. Ct. 885, 891-92, 107 L. Ed.
2d 967 (1990).

 A claimant can meet Listing 12.05 with a valid verbal,
performance, or full-scale IQ of 59 or less. 20 C.F.R. Pt. 404,
Subpt. P, App. 1, § 12.05(B). To meet Listing 12.05 with an IQ
between 60 and 70, a claimant must have "a physical or other
mental impairment imposing an additional and significant work-
related limitation of function." <u>Id.</u> § 12.05(C). Alternatively,
a claimant can meet Listing 12.05 with an IQ of 60-70 when it
results in at least two of the following:

   1. Marked restriction of activities of daily living;
     or

   2. Marked difficulties in maintaining social
     functioning; or

   3. Marked difficulties in maintaining concentration,

persistence, or pace; or

4.   Repeated episodes of decompensation, each of extended duration.

Id. § 12.05(D).

In evaluating a claimant's ability to meet Listing 12.05, the ALJ need not accept the claimant's IQ scores as valid and may rely on external evidence, such as a claimant's participation in activities inconsistent with her IQ scores or evidence of malingering, to find that the claimant does not meet the Listing. See Thresher v. Astrue, 283 F. App'x 473, 475 & n.6 (9th Cir. 2008) (remanding for clarification because ALJ did not reference Listing 12.05 in rejecting claimant's claims of mental retardation).   In relying on external evidence, the ALJ must explain how that evidence affects the validity of the IQ score. See id.; Gomez v. Astrue, 695 F. Supp. 2d 1049, 1057 (C.D. Cal. 2010).

An ALJ's decision that a plaintiff did not meet a Listing must be upheld if it was supported by "substantial evidence." See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).   Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).   When evidence was susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion as long as substantial evidence existed to support it.   Id.

2.   Analysis

Plaintiff has not identified exactly how she contends she

16

satisfied Listing 12.05(C) or (D).  She simply insists that
because she had an IQ of 67 on one test she was mentally
retarded.  (J. Stip. at 12-13.)  But under 12.05(C) or (D), more
was needed.  Plaintiff's full-scale IQ of 67 and her scores and
intellectual functioning were in the "borderline range."  (AR
294-95.)  The ALJ determined that beyond Plaintiff's IQ score,
the other evidence in the record did not support a finding that
Plaintiff met Listing 12.05; he discounted her IQ score based on
the lack of evidence in the record of subaverage general
intellectual functioning coupled with evidence of malingering.
(AR 30-31.)  By expressly mentioning Listing 12.05 and explaining
why he found it did not apply, the ALJ met his burden to explain
why the IQ score was invalid based on other evidence in the
record.  See Gomez, 695 F. Supp. 2d at 1057; cf. Thresher, 283 F.
App'x at 475 (remanding for clarification because ALJ did not
mention Listing 12.05).

    Substantial evidence supported the ALJ's conclusion.  Dr.
Jeannette Townsend's August 5, 2008 report indicated that
Plaintiff did not demonstrate evidence of mental retardation and
was capable of caring for herself and her son and functioning
normally in society.  (AR 294.)  She noted that Plaintiff drove
herself to her appointment and arrived on time, was able to
provide background information, was an adequate historian, and
listened to and followed the doctor's instructions.  (AR 292.)
Plaintiff's thinking was organized, her insight was fair, and her
comprehension and judgment for simple practical situations were
fair.  (AR 293-94.)  Plaintiff also indicated that she cared for
her 15-year-old son, performed household chores, ran errands,

17

shopped, and cooked.  (AR 294.)

     In addition to Dr. Townsend's findings, substantial other
evidence in the record supported the ALJ's conclusion.  On March
28, 2007, Plaintiff was evaluated at Pacific Clinics by therapist
Irma Rivera and Dr. Pat Sandoval, who found that her
"Interactional Style" was "culturally congruent," her memory was
"unimpaired," her "fund of knowledge" was "average," her affect
was "appropriate," and she had no apparent perceptual or thought
content disturbances.  (AR 277-78.)  They also found that her
thought associations were "unimpaired"; her concentration,
abstractions, and judgments were "intact"; and her insight was
"adequate."  (AR 277.)  On August 14, 2007, Plaintiff was again
evaluated at Pacific Clinics, by Nurse Practitioner Janet
Gourley, who found that her sensory and intellectual functioning
were "unimpaired," her vocabulary was "good," and her thought
processes were "intact."  (AR 282.)  On July 26, 2008, Dr. Sean
To found that Plaintiff was "appropriately oriented," her memory
"appeared to be average," and she "appeared to be in no acute
[mental] distress."  (AR 286.)  On September 12, 2008, Dr. F.L.
Williams performed a psychiatric examination of Plaintiff.  (AR
305-16.)  He found that her "intellectual functioning is in the
borderline range," her "memory is low compared to other people
her age," and her "general fund of information is low," but he
also found that her "affect was appropri[a]te in degree and kind"
and she was able to care for herself and engage in normal social
activities.  (AR 315.)  He specifically did not indicate that she
had any symptoms of mental retardation within the meaning of
Listing 12.05.  (See AR 305, 308.)  Moreover, as the ALJ noted,

evidence in the record showed that Plaintiff simulated or exaggerated her symptoms.  (<u>See</u> AR 393 (noting that Plaintiff "is malingering, simulated or exaggerated pain").)

Even if Plaintiff's IQ score of 67 were valid, she did not demonstrate, as was her burden, that she met the requirements of Listing 12.05(C) or (D).  Subsection (C) requires, in addition to the necessary IQ score, "<u>a</u> physical or other mental impairment imposing an additional and significant work-related limitation of function" (emphasis added).  This requirement can be met by the ALJ's finding that the claimant has a severe impairment.  <u>Gomez</u>, 695 F. Supp. 2d at 1062; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); <u>see also</u> <u>Fanning</u>, 827 F.2d at 633 ("[A]n impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal.").  Here, however, the ALJ found that Plaintiff's impairments "<u>in combination</u>[] are severe."  (AR 28.)  The ALJ carefully went through each impairment and explained why none was severe by itself.  (AR 28-31.)  Given that the Listing requires "a" significant impairment, it is not at all clear that the ALJ's finding satisfies § 12.00(A).  Moreover, the ALJ found that Plaintiff could perform medium-level work, a finding Plaintiff does not directly challenge.  While cases have held that claimants who are limited to <u>light</u> or <u>sedentary</u> work satisfy the 12.05(C) requirement, <u>see, e.g.</u>, <u>Markle v. Barnhart</u>, 324 F.3d 182, 188 (3d Cir. 2003) (claimant's impairments "limit[ing] him to some forms of light work constitute impairments 'imposing additional and significant work-related limitations of function'"); <u>Nieves v. Sec'y of</u>

1  Health & Human Servs., 775 F.2d 12, 13-14 (1st Cir. 1985)

2  (claimant who "could not perform the full range of sedentary

3  work" satisfied second prong of Listing 12.05(C)); Mowery v.

4  Heckler, 771 F.2d 966, 973 (6th Cir. 1985) (second prong

5  satisfied when claimant limited to light or sedentary work),

6  apparently none have held that a claimant who can perform medium

7  work does.  Accordingly, Plaintiff has not met her burden of

8  showing that she satisfied Listing 12.05(C).  Similarly, she has

9  not even attempted to explain how she can satisfy subsection (D),

10 and nothing in the record calls into question the ALJ's

11 determination that she did not.

12      Plaintiff argues that because she "could not complete school

13 past the third grade, nor did she possess the capability to learn

14 the English language," she was mentally impaired.  (J. Stip. at

15 13.)  But the evidence of record, and the evidence Plaintiff

16 cites in support of her argument, merely demonstrates that

17 Plaintiff had a third-grade education and did not speak English.[6]

18 (AR 25-26, 286, 292-96, 497.)  It does not demonstrate that she

19 was unable to complete school past the third grade or learn

20 English.

21      Plaintiff further argues that according to the Diagnostic

22 and Statistical Manual of Mental Disorders ("DSM"), an individual

23 with an IQ of 50-55 to approximately 70 may be assessed as

24 mentally retarded.  (J. Stip. at 12.)  But the DSM notes that

25 "Mental Retardation would not be diagnosed in an individual with

26

27 _____

28      [6]  As noted, the evidence also showed that she had passed a
   test that required ninth-grade reading skills.  (AR 496.)

                                  20

an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning." <u>See</u> Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 42 (4th ed. 2000). This is similar to Listing 12.05(C) and (D), which allows a claimant to meet the Listing with an IQ score of 60-70 only when evidence of significant impairment exists beyond the IQ score itself. Here, as noted above, substantial evidence supported the ALJ's finding that Plaintiff was not mentally retarded within the meaning of Listing 12.05 because no evidence of mental retardation existed other than her IQ score of 67, which did not comport with the other evidence in the record. Under the DSM's similar standard, the ALJ's conclusion was also proper.[7]

---

[7]   Plaintiff briefly argues that "[t]o the extent that the Commissioner may read the listing as requiring deficits in adaptive functioning, the ALJ should have requested that Dr. Townsend administer the Vineland test for adaptive functioning," but she fails to elaborate on this argument or cite to evidence in the record in support of it. (J. Stip. at 13.) Plaintiff had the burden to prove her impairment under Listing 12.05. The ALJ had sufficient evidence to make a proper determination in regards to Plaintiff's restrictions and limitations, as discussed above, and he was under no obligation to instruct Dr. Townsend to administer further testing when Plaintiff failed to carry her burden of proof. <u>See Ukolov v. Barnhart</u>, 420 F.3d 1002, 1004 (9th Cir. 2005) (noting that "[t]he claimant carries the initial burden of proving a disability," and "[f]ailure to prove disability justifies a denial of benefits"); <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1222 (9th Cir. 2009) ("The burden of proof is on the claimant at steps one through four . . . .").

**VI.   CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 6, 2012

_____
JEAN P. ROSENBLUTH
U.S. Magistrate Judge

_____

    [8]   This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

22